JOURNAL ENTRY AND OPINION
Defendant-appellant Remey Rashad appeals her conviction of aggravated vehicular homicide in the Cuyahoga County Common Pleas Court asserting that the verdict was against the manifest weight of the evidence. Defendant also contends that the jury should have been instructed on the affirmative defense of duress. Finally, defendant contends that the trial court erred by not sentencing her to the shortest prison term possible and by failing to notify her of the post release control provisions at her sentencing. For the following reasons, we affirm the decision of the trial court, but remand for resentencing in compliance with R.C.2929.19(B)(3).
At trial, the following facts were established: On November 30, 1999, at approximately 8:30 p.m., a collision occurred at the intersection of Babbitt Road and N. Lakeland Boulevard in Euclid, Ohio between defendant's westbound vehicle and a northbound vehicle driven by Norbert Lee. Following the initial impact, Mr. Lee's vehicle struck another vehicle driven by Kimberly Moore-Hobbs and then struck another car driven by Ronald Harris. As a result of the collision, Mr. Lee died.
Prior to the collision, defendant and her boyfriend, Kenneth Clark, had dinner at her mother's house. Upon leaving her mother's house, defendant's ex-boyfriend, Jerry Anderson[1], pulled up in his car with his cousin, Larue Hayes. Mr. Anderson exited his vehicle, came over to defendant, who was sitting in the driver's seat of her car, and threatened to kill her.
Defendant drove off in her car with Mr. Clark as a passenger and Mr. Anderson pursuing her. She drove eastbound on Euclid Avenue, through the cities of Cleveland, East Cleveland and Euclid, with Mr. Anderson behind her.
While driving eastbound on Euclid, a westbound patrol car from the Euclid Police Department saw two vehicles pass him at a high rate of speed. One of the vehicles was blowing the horn. The patrolman, Officer Michael Knack, made a U-turn and tried to catch the cars; however, he lost them. Shortly thereafter, Officer Knack received a broadcast of a motor vehicle accident at the intersection of Babbitt and N. Lakeland and proceeded to the scene where other police had already arrived.
Upon arriving at the scene of the accident, Officer Knack was advised by several witnesses that the two occupants of one of the vehicles involved in the collision had run toward the Clay Matthew's Pontiac parking lot immediately following the accident. Officer Knack brought these individuals, defendant and Mr. Clark, to his patrol car for questioning where defendant told him that she was being chased by Mr. Anderson.
Several days after the accident, Officer Knack interviewed Mr. Anderson. Mr. Anderson admitted that he was chasing defendant. Mr. Anderson also says that both cars were traveling at high speed and crashed several red lights. In addition, several eyewitnesses were interviewed by Euclid Police. Ten days after the accident, Mr. Lee died.
On March 28, 2000, defendant was indicted for one count of aggravated vehicular homicide, a felony of the third degree, for recklessly causing the death of Mr. Lee. Defendant entered a plea of not guilty at her arraignment and her case proceeded to a jury trial.
At trial, the State alleged that defendant recklessly caused the death of Mr. Lee when she drove through the intersection and struck Mr. Lee's car. The State first presented the testimony of Officer Knack, who testified he observed two vehicles pass him on Euclid at speeds of approximately 60-70 m.p.h. in a zone marked 35 m.p.h. Officer Knack also testified that defendant told him that she had seen his car on Euclid and had honked her horn to get his attention. Officer Knack acknowledged that he issued no traffic citations to defendant for the incident.
The State then called Officer Larry Germovsek from the Euclid Police Department, who testified that he investigated the scene of the accident shortly after it occurred. Officer Germovsek testified that defendant told him that she had been pursued, was going 50 m.p.h. and had gone through a red light at the intersection where the collision occurred. Based upon his measurements and reconstruction of the accident, Officer Germovsek opined that Mr. Lee had a green light and defendant had a red light at the Babbitt and N. Lakeland intersection. He also opined that defendant was traveling at a speed of at least 60 m.p.h. at the time of the collision. He also stated that there was no evidence that defendant applied her brakes prior to impact with Mr. Lee's car since there were no skid marks.
Kimberly Moore-Hobbs testified that she was stopped at a red light in the curb lane at the intersection of Lakeland and Babbitt when she witnessed the car accident. Ms. Moore was traveling south on Babbitt at the time of the collision. Her vehicle was the first car at the light and there were cars stopped behind her and next to her on the left. She testified that she saw two vehicles on her left crash and that one of the cars, Mr. Lee's, spun towards her, grazed her bumper and hit the car behind her. She further testified that immediately following the collision, she observed the defendant and her passenger running away from the scene and heard the defendant shouting, He's going to kill me. Ms. Moore drove to K-Mart and informed an officer there about the accident. She then went to the Euclid police department to make a report.
Sara Biro testified that she was stopped at a red light at the intersection of Lakeland and Babbitt when she witnessed the car accident. Ms. Biro was in the curb lane on westbound N. Lakeland about to turn north onto Babbitt at the time of the collision. Her vehicle was the first car at the light and there were cars stopped behind her and next to her on the left. She testified that she saw defendant's headlights in her side mirror coming up very fast and then saw defendant enter the intersection at a speed of about 55 m.p.h. and hit Mr. Lee's vehicle broadside as he was proceeding through the intersection on the green light. She testified that she did not see any brake lights on defendant's vehicle. She also testified that immediately following the collision, she observed the defendant and her passenger running away from the scene. Ms. Biro testified that she exited her vehicle and attended to Mr. Lee who was unconscious and covered in blood. On cross-examination Ms. Biro stated that she heard defendant screaming that she was going to get killed as she was running away from the scene.
Dr. Martha Steinberg, a deputy coroner, testified that Mr. Lee died as the result of blunt impacts to the head, with skull and brain injuries, subdural hematoma, and anoxic encephalopathy. She further testified that Mr. Lee had a blood alcohol level of .119 at the time of the collision.
The State's last witness was Ronald Harris who testified that he was stopped at a red light in the curb lane at the intersection of Lakeland and Babbitt at the time of the car accident. Mr. Harris was traveling south on Babbitt at the time of the collision. His vehicle was behind Ms. Moore-Hobb's car. He testified that he heard but did not see the collision between defendant and Mr. Lee. Instead, he only saw Mr. Lee's car crash into his car. He testified that he exited his vehicle to approach Mr. Lee's car when he heard someone yell, They are getting away. Mr. Harris then observed the defendant and her passenger running away from the scene and chased after them. Mr. Harris was able to approach the defendant and bring her back to the scene with him. On cross-examination, Mr. Harris stated that he heard defendant screaming, He's going to kill me. He's going to kill me.
For the defense, defendant testified on her own behalf. Defendant testified that she was scared of Mr. Anderson and was trying to get away from him. She stated that she was trying to find a police station or a patrol car. She acknowledges that she drove past the East Cleveland police station on Euclid, but states that she could not pull in because a bus was in the way.
Defendant testified that she did not know how fast she was going during the chase, but that she was not traveling at an excessive speed and stopped at all traffic signals. Defendant stated that all of the State's witnesses who said she was speeding and went through a red light at the intersection were lying. Defendant was adamant that the light at the intersection where she collided with Mr. Lee was green in her favor when she went through it. Defendant further testified that she was not fleeing from the scene, but merely ran from the car after the accident to call for help. Defendant also testified that she went over to Mr. Lee's car to see if he was okay before she ran away.
The jury returned a verdict of guilty on the aggravated vehicular homicide charge. Defendant appeals the verdict, asserting five assignments of error. Assignment of Error I states:
 I. THE JURY'S VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
In her first assignment of error, defendant maintains that her conviction for aggravated vehicular homicide was against the manifest weight of the evidence. We disagree.
In determining whether a criminal conviction is against the manifest weight of the evidence, this court must examine the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of the witnesses to determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created a manifest miscarriage of justice. State v. Thompkins (1997), 78 Ohio St.3d 380. This court should grant a new trial only in an exceptional case in which the evidence weighs heavily against the conviction. State v. Martin (1983), 20 Ohio App.3d 172, 175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230 . If the jury's verdict is supported by sufficient competent and credible evidence going to each essential element of the crime charged, this court may not reverse. Id.
Here, defendant was charged with aggravated vehicular homicide. R.C.2903.06, governing aggravated vehicular homicide, provides that "no person, while operating or participating in the operation of a motor vehicle * * * shall recklessly cause the death of another * * *." The statute defining the culpable mental state of recklessness, R.C.2901.22(C), provides the following:
 A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist.
Defendant's argument with respect to the weight of the evidence focuses on the State's alleged failure to prove that she acted recklessly. Defendant argues, in support of this assignment, that proof of excessive speed alone is insufficient to demonstrate recklessness beyond a reasonable doubt. Defendant argues that her actions demonstrate negligence at best.
At trial, the jury heard Officer Michael Knack testify that he observed defendant's vehicle traveling at a high rate of speed on Euclid just prior to the accident. Officer Larry Germovsek testified that defendant told him she was going 50 m.p.h. at the time of the collision and ran the red light. Sara Biro testified that she observed defendant approach a crowded intersection at a speed of approximately 55 m.p.h. and never attempt to slow down or stop before hitting Mr. Lee's vehicle, even though the light was red. Kimberly Moore-Hobbs testified she saw the collision and then saw defendant get out of the driver's side of the car and run away from the scene. Ronald Harris also testified defendant fled from the scene.
We find this to be substantial, competent, credible evidence upon which a jury could base its decision that defendant was recklessly operating her vehicle at the time of the accident and was guilty of recklessly causing the death of another beyond a reasonable doubt. Accordingly, we conclude defendant's conviction for aggravated vehicular homicide was not against the manifest weight of the evidence. This assignment of error is overruled.
 II. THE TRIAL COURT ERRED BY NOT INSTRUCTING THE JURY AS TO THE AFFIRMATIVE DEFENSE OF DURESS.
In her second assignment of error, defendant claims that the trial court erred in not giving the jury a duress instruction. Since defendant's trial counsel did not request an instruction on duress, we review this assignment of error under the plain error standard of review. State v. Waddell (1996), 75 Ohio St.3d 163, 166. In order to warrant reversal based on plain error, the error must be such that, but for the error, the outcome of the trial would have clearly been different. Id.
Defendant contends that the trial court erred by not giving a duress instruction, despite the fact that trial counsel did not request a duress instruction. Defendant relies on R.C. 2945.11 to support her contention. That section provides, in pertinent part, "In charging the jury, the court must state to it all matters of law necessary for the information of the jury in giving its verdict."
Here, a duress instruction was not relevant and necessary for the jury to discharge its duty. To prove duress, defendant must show that she was forced to perform the act against her will by an immediate and continuous threat of grave danger during the entire time that the act was being committed. State v. Good (1960), 110 Ohio App. 415, 419. Applying this standard, it is apparent that defendant failed to show that she was compelled to commit a crime as a result of a continuous threat from Mr. Anderson. While evidence was presented to suggest that defendant was being pursued and that she was fearful of Mr. Anderson, her testimony belies her claim that she acted under duress. Specifically, defendant testified that she was not speeding, that she stopped at all red lights, and that she did not crash the light at Babbitt Road. (Tr. at 255, 276, 282, 289, 292). Indeed, defendant adamantly insists that the light was green in her favor at the time of the collision. (Tr. at 260, 263, 265, 280, 310, 311).
With this testimony, defendant did not satisfy her burden of presenting evidence of a nature and quality sufficient to raise the defense of duress and merit an instruction. Therefore, the trial court did not err in failing to instruct on the affirmative defense of duress. Accordingly, defendant's second assignment of error is overruled.
 III. THE APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL.
In her third assignment of error, defendant claims she was denied the effective assistance of trial counsel because her counsel did not request a jury instruction on duress. We disagree.
To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different.
With regard to trial counsel's failure to request an instruction on duress, we have already held that defendant has not shown that such failure affected the outcome of the trial. Therefore, defendant was not denied effective assistance of counsel on that basis. Moreover, because we find that an instruction on duress was not warranted in this case, we find that trial counsel was not ineffective in not requesting it. Accordingly, defendant's third assignment of error is overruled.
 IV. THE TRIAL COURT ERRED BY NOT SENTENCING THE DEFENDANT TO THE SHORTEST PRISON TERM AUTHORIZED BY LAW.
In her fourth assignment of error, defendant maintains that the trial court erred in sentencing her to a two-year prison term since she was a first-time offender. We disagree.
R.C. 2929.14(B) requires a trial court to impose a minimum sentence for first-time imprisonment unless it specifies on the record that the shortest prison term will demean the seriousness of the conduct or will not adequately protect the public from future crime by the offender. State v. Edmonson (1999), 86 Ohio St.3d 324 . The record must reflect that the trial court found that either or both of the two statutorily sanctioned reasons for exceeding the minimum term warranted the longer sentence. Id. The trial court need not give its reasons for imposing more than the minimum authorized sentence, however, it must be clear from the record that the trial court engaged in the analysis and that it varied from the minimum for at least one of the two sanctioned reasons. Id.; State v. Anderson (Sept. 27, 2001), Cuyahoga App. No. 78887, unreported.
Here, at the sentencing hearing, the trial court stated the following:
 Ms. Rashad, this is a very difficult decision for this Court. I believe that you could have made different choices. You have no criminal record, but to give you the minimum sentence would demean the seriousness of this crime. You caused the death of another. You were acting in a highly reckless manner. At trial you indicated that the light was green and you weren't speeding. It was directly contrary to the testimony of several independent witnesses.
The record adequately shows that the trial court complied with the dictates of R.C. 2929.14(B) when imposing more than the minimum sentence. Specifically, the court specified that the one year minimum sentence would demean the seriousness of defendant's conduct. Thus, it is clear that the trial court decided to depart from the statutorily mandated minimum based on one of the permitted reasons found in R.C.2929.14(B). Accordingly, defendant's fourth assignment of error is overruled.
 V. THE TRIAL COURT ERRED BY FAILING TO NOTIFY THE DEFENDANT OF THE POST RELEASE CONTROL PROVISIONS OF R.C. 2929.19(B)(3).
In her fifth assignment of error, defendant maintains that the trial court erred by failing to notify her of the post release control provisions of R.C. 2929.19(B)(3). We agree.
Pursuant to R.C. 2929.19(B)(3), the trial court has a mandatory duty at the sentencing hearing to notify the defendant that she is subject to post-release controls. See State v. Melton (May 4, 2000), Cuyahoga App. No. 75792, unreported; State v. Shine (Apr. 29, 1999), Cuyahoga App. No. 74053, unreported.
A review of the sentencing hearing transcript shows that the trial court failed to satisfy the notification requirements of R.C.2929.19(B)(3). Thus, defendant's fifth assignment of error is well taken. Accordingly, we remand this case for resentencing in compliance with R.C. 2929.19(B)(3).
Judgment affirmed; cause remanded for resentencing.
It is ordered that appellant and appellee shall each pay their respective costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for resentencing.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, P.J., and JAMES D. SWEENEY, J., CONCUR.
[1] Mr. Anderson was also named in a separate count of the same indictment for involuntary manslaughter during the commission of a misdemeanor, a felony of the third degree. The jury also returned a guilty verdict for Mr. Anderson and he was sentenced to a term of incarceration of four years.